## WALL v. UNITED GAS PUBLIC SERVICE CO. et al.

### No. 5299.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

See, also, 171 So. 497.

Dhu Thompson, of Monroe, for appellant.

Shotwell & Brown, of Monroe, and Madison, Madison & Fuller, of Bastrop, for appellees.

TALIAFERRO, Judge.

In this suit, plaintiff, Shady J. Wall, seeks to be recognized as the owner and entitled to receive one-half of all rents and royalties due and/or to become due and payable under the terms of that certain mineral lease executed by the West Monroe State Bank and Charles G. Wall to the Greenwood Production Company on August 7, 1930, embracing the following described lands in Ouachita parish:

"Lot 4 and all that portion of the NE¼ of SW¼, lying North of Coulee or Cross Bayou, of Section 23, Township 19 North, Range 3 East, containing 80 acres, more or less."

The said bank, Charles G. Wall and the United Gas Public Service Company, assignee of the Greenwood Production Company, were made parties defendant.

On May 9, 1921, plaintiff, for a consideration of $16,000.00, partly paid by the value of other lands given in exchange, and the balance liquidated by the notes of the vendee, maturing over a period of seventeen years, conveyed to Charles G. Wall, his son, the Aaron plantation in Ouachita parish, containing several hundred acres, less certain excepted portions thereof, and also the 80-acre tract above described. The act of sale and exchange contains the following reservation and stipulation:

"Provided, however, that it is distinctly understood that in case of the discovery and development of oil, gas and mineral rights on any of the said property, the vendor herein reserves and shall receive from the vendee, his heirs, successor or assigns, a half of all royalties received by the transferee, his heirs or assigns either from oil, gas or other minerals produced or developed upon said property, it being understood that the right on the part of the transferee to mortgage, alienate, or otherwise dispose of said oil, gas or other mineral rights shall not be impaired by this contract and that he shall have the right to mortgage, control, alienate or otherwise dispose of same without the necessity of conferring with this vendor, his heirs or assigns, he, his heirs, transferees and assigns being only obligated to pay over and to account for half of all royalties received by him in connection with said mineral rights."

On April 14, 1923, Charles G. Wall reconveyed to plaintiff for the recited price of $16,000.00 cash, the identical property acquired by him from plaintiff on May 9, 1921, and on the same day plaintiff transferred back to Charles G. Wall the same property for the same recited price. In neither deed is there any mineral reservation of any character. These deeds, it is contended, were executed in order to correct some alleged errors of description therein, but no such purpose or intent appears in either instrument.

On October 10, 1923, Charles G. Wall sold and conveyed to R. B. Halsell a portion of the lands he had previously acquired from plaintiff, his father, including the 80-acre tract in Section 23, described above. This instrument contains the following mineral reservation:

"It is also understood and agreed that the said Wall hereby reserves to himself, his heirs and assigns, an undivided one-half interest in and to all of the minerals, fugitive and placed, 'in, on and under the said property hereby conveyed to the said Halsell.

"It is further understood and agreed that the said Halsell is to receive one-half of the yearly rentals on the mineral lease now extant upon the records against the said property.

"It is agreed and understood that the reservation hereby made by the said Wall of the minerals hereinabove referred to is a mere servitude and prescribes in ten years from the date hereof, and that at the end of said ten-year period, as a part of the consideration of this contract, the said Halsell binds and obligates himself to renew said reservation of said undivided one-half interest in the minerals by deed, conveying the same to the said Wall, for the price of $100.00 cash."

On May 6, 1924, Halsell and wife executed a mortgage on the tracts acquired by him from Wall, supra, to the Federal Land Bank of New Orleans, Louisiana, to secure a note of $10,800.00, payable over a period of 35 years. He defaulted in the annual payments on the note and it was thereafter purchased from the Bank by Edwin S. Hall, who forced a sale of the mortgaged property by foreclosure proceedings. At sheriff's sale, on December 10, 1928, defendant, the West Monroe State Bank, became the purchaser of the property. There is no mention in this deed nor in the mortgage to the Federal Land Bank of any preexisting mineral reservation or reservations.

On January 11, 1926, Charles G. Wall and R. B. Halsell "bargained, sold and assigned" to plaintiff an undivided half interest in and to all royalties "accruing or hereafter to accrue under leases heretofore made by the said C. G. Wall and R. B. Halsell, or either of them, their heirs or assigns" on the 80-acre tract above mentioned, and two other lots of land. The wording of stipulations in this assignment is quite similar to that of the reservation in the deed of May 9, 1921, from S. J. Wall to Charles G. Wall, quoted heretofore. It is made plain that the parties intended, so far as they were able, to reestablish in S. J. Wall the rights and benefits reserved by him in his first deed to Charles G. Wall (May 9, 1921). In executing this assignment, the parties tacitly reflect a consciousness on their part that the public records, as regards this land, did not disclose that S. J. Wall was vested with any interest in the royalty dealt with therein. However, this instrument was executed and registered over eighteen months subsequent to the date and registry of the mortgage from Halsell to the Federal Land Bank.

The value of the lands described in these various instruments enhanced because of the discovery of gas near them, augmented by the hope of profitable oil production in the same territory, and in August, 1930, opportunity arose for the closing of new leases thereon for attractive cash considerations plus bonuses. On August 18, 1930, the bank's board of directors, by formal resolution, authorized its president, Mr. E. D. Cason, to execute oil and gas leases to the Interstate Natural Gas Company, incorporated, and to the Ouachita Natural Gas Company, Incorporated, on separate pieces and parcels of its lands, therein described; and also authorized its said president to execute such a lease to the Greenwood Production Company on the said 80-acre tract, above described, all on terms and conditions expressed in the resolution. The directors at the same time adopted the following resolution:

"Mr. Cason stated that the West Monroe State Bank was the owner of the entire surface of said lands set out in the foregoing resolution, but was the owner of an undivided interest only in the minerals as to part, together with Charles G. Wall and S. J. Wall, and that, inasmuch as there was doubt as to whether prescription was running in favor of this corporation against the interest owned by the said Charles G. Wall and S. J. Wall because of non-development of said lands in which they own said mineral interest, the said Charles G. Wall and S. J. Wall were not agreeable to joining with this corporation in granting said leases and thereby permitting a complete and valid lease being given on the entire property without this corporation entering into an agreement

with them by which five years from the lapse of the various ten year periods after the dates of the reservations of the said mineral interests by the said Charles G. Wall and S. J. Wall or those under whom they hold. After a full discussion of the matter was had and realizing the advantages to be gained by this corporation being able to execute a lease on said properties in favor of said companies, it was unanimously decided that said instrument should be executed, granting unto the said Charles G. Wall and S. J. Wall, in the event prescription is running against their said mineral interest five years from the lapse of the various ten year periods after the dates of the reservations of the said mineral interests by the said Charles G. Wall and S. J. Wall, or those under whom they hold, unless, in the meantime, the said prescription is interrupted by development in the manner required by law.

"Whereupon, Mr. R. P. Benson offered the following resolution:

" 'Be it Resolved, that this corporation at this time execute an instrument, along with Charles G. Wall and S. J. Wall, by which five years will be given from the lapse of the various ten year periods after the dates of the reservations of certain mineral interests owned by Charles G. Wall and S. J. Wall under portions of the land owned by the West Monroe State Bank by the said Charles G. Wall and S. J. Wall, or those under whom they hold.

" 'Be it further resolved, that Mr. E. D. Cason, President of this corporation, is hereby specially authorized to enter into such an agreement for and on behalf of this corporation and to do all things which, in his judgment, are advisable to carry into full force and effect the true intent and purpose of this resolution.' "

However, previous to the adoption of these resolutions, on August 7, 1930, the bank and Charles G. Wall had already executed to the Greenwood Production Company the oil and gas lease covering said 80-acre tract, under which plaintiff seeks to recover the royalty herein claimed by him. Profitable gas production thereon has since been secured. In the leases executed by the bank, plaintiff and Charles G. Wall, jointly, to the Interstate Natural Gas Company, Inc., in keeping with said resolutions, appears the following stipulation:

"The West Monroe State Bank, as owner of the entire surface of said lands and of an undivided interest in the minerals as to part, together with Charles G. Wall and S. J. Wall, recognizing that there is doubt as to whether prescription is running in favor of said bank against the interest owned by Charles G. Wall and S. J. Wall, because of non-development of said lands in which they own said mineral interest, does for valuable consideration and in compromise of the conflicting claims, hereby covenant and agree to extend the rights, should prescription be running, of said Charles G. Wall and S. J. Wall, for periods of five years from the lapse of the various ten year periods after the dates of the reservations of said mineral interest by said parties, or those under whom they hold; the intention hereof being that, even should the prescription of ten years be applicable to undivided mineral interest, same is hereby interrupted and the rights extended for an additional period of five years as to the respective mineral interests of said Charles G. Wall and S. J. Wall in proportions of the hereinabove described property."

It is clear, from plaintiff's allegations, that his hopes for recovery are almost entirely based upon the contents of the above quoted resolution, and the quoted stipulation in the leases to the Interstate Natural Gas Company. He contends the bank thereby recognized as vested in him the rights he seeks to enforce in this suit.

The bank filed exceptions of no cause and no right of action. These were overruled. They are reurged here.

Answering, the bank denies that plaintiff is the owner of or entitled to be paid or to receive that portion of the royalties sued for. Its position is that the reservation in the deed of May 9, 1921, from plaintiff to Charles G. Wall was completely effaced by the subsequent deeds between them, wherein there were no reservations at all; that according to the records, particularly as concerns the rights of third persons, when Charles G. Wall conveyed the land or part of it to Halsell on October 10, 1923, he then owned all the mineral rights thereto, and thereby transferred to Halsell all such rights (one-half) which he did not reserve for himself; that the mortgage to the Federal Land Bank embraced all the surface rights and that part of the mineral rights not reserved by Charles G. Wall, and that the same rights, through the foreclosure proceedings and sheriff's deed, were acquired by it (the bank). It

denies expressly that the resolution of its board of directors, above quoted, was intended to recognize nor did it have the effect of recognizing S. J. Wall as entitled to the royalty involved in this suit.

The United Gas Public Service Company's position is that it acquired the lease rights of the Greenwood Production Company. upon the faith of the public records; that its title thereto is paramount, and beyond this, has no real interest in the outcome of this controversy, save to pay royalties to the person or persons to whom they are due, a fact to be determined by this suit. This company thereafter intervened in the case and, with the court's permission, deposited in its registry the amount of accrued royalty in controversy in this suit. By his answer, Charles G. Wall admits all the allegations of fact and conclusions of law alleged upon by plaintiff.

The bank then called Charles G. Wall in warranty. Its right to do so is predicated upon these record facts: that by warranty deed he sold and conveyed to R. B. Halsell the 80-acre tract herein involved, and therein reserved to himself a half interest in and to the minerals thereunder, the effect of which being to vest in the said Halsell title to the land and an undivided half interest in and to the minerals thereon or thereunder; that said bank acquired the title and interest in said land and said minerals which Halsell had acquired from Wall, by and through said sheriff's sale to it; that in view of his warranty obligations under his deed to Halsell, Wall is legally bound to defend the title he gave Halsell and to defend that which the bank acquired from Halsell. The call in warranty was served but was not put at issue by answer or default. However, on March 27, 1936, during an adjournment of the trial, plaintiff executed to Charles G. Wall, for a cash consideration, an assignment of all of the royalty rights and claims he sued for. On petition therefor, Charles G. Wall was then substituted as party plaintiff in the case. The bank thereupon filed a plea of estoppel against him prosecuting the case further invoking the legal principle that he who sells a thing of which he is not the owner, and thereafter acquires title to it, is estopped, on account of his warranty obligations, from questioning the title given by him to his grantee, and that the newly acquired title

inures to the benefit of such grantee. The plea was not passed on below.

The demands of the substituted plaintiff were rejected and he has appealed.

It is not seriously contended nor could it well be that the West Monroe State Bank did not acquire at the sheriff's sale in the foreclosure against Halsell the 80-acre tract involved herein, with all rights and privileges appertaining, save and excepting the one-half interest in the minerals and mineral rights therein which were reserved by Charles G. Wall in his deed to Halsell. So far as the record reveals, the conditions reflected from which serve as a safe guide for innocent third persons, the reservation made by Shady J. Wall in his deed to Charles G. Wall, became extinct by confusion through the retransfer of the property by the latter to the former on April 14, 1923. As between these two parties the original reservation may have remained intact, but not so as concerns third persons acting upon the faith of the contents of the public records.

We are of the opinion that the exceptions of no cause and no right of action are not destitute of merit, but as we believe the judgment appealed from is correct, we shall pass upon the merits of the case and finally dispose of it.

The plea of estoppel filed by the bank against the substituted plaintiff would be good, but for the contention that by its own action, subsequent to the incurring of the obligations of a warrantor by Charles G. Wall, the bank itself recognized that Shady J. Wall did own and was vested with title to the interest in the royalties sued for. Brewer et al. v. New Orleans Land Company, 154 La. 446, 97 So. 605; Simmons v. Carter, 186 La. 377, 380, 172 So. 425.

We do not think the bank's resolution, relied upon by the Walls to accomplish the reinvestment ·or reestablishment in S. J. Wall of the royalty reservation described in his deed to Charles G. Wall of May 9, 1921, can reasonably be construed to have had such far-reaching effect. Such a construction would patently contradict the resolution itself, especially the positive declaration therein that the bank "was the owner of the entire surface of said lands * * *" but "of an undivided interest only in the minerals as to a part", etc. The "part" of the lands in

which the bank's mineral interest was undivided is not segregated from the "part" to which it owned all the minerals. If such a construction were adopted, it would mean that the bank in reality had no mineral interest in the land at all, because it is certain Charles G. Wall owned one-half thereof. This would fly directly into the teeth of the resolution and of the quoted stipulation in the leases to the Interstate Natural Gas Company, wherein the bank persists in the declaration that it has an undivided mineral interest in the lands, the subject of the leases. If it was then thought that the resolution applied to the said 80-acre tract, why was not the signature of S. J. Wall affixed to the lease of it to the Greenwood Production Company? Again, the resolution and stipulation refer to "the interest (mineral) owned by the said Charles G. Wall and S. J. Wall", which it was feared would be lost "because of the non-development of said lands in which they own said mineral interest". It is certain that when the resolution was adopted, S. J. Wall, according to the public records, owned no interest in the minerals of the said 80-acre tract, save such as was attempted to be imparted to him by the assignment executed by Halsell and Charles G. Wall on January 13, 1926, referred to above. This act was impotent as against the bank. The extension authorized by the resolution was to apply only to lands wherein S. J. Wall held some mineral interest. Such an interest, of course, could only be determined from the face of the public records.

 The thought has occurred to us that it is not improbable that the mineral interest referred to in the resolution as being owned by the Walls was that which Charles G. Wall reserved in his deed to Halsell. The interest of the father therein could easily have been coextensive with that of the son. The son was personally bound under the reservation in the first deed to him to account to the father for one-half of all amounts received by him as royalty from production on the lands conveyed.

The bank acquired a valuable mineral right when it purchased the lands at sheriff's sale. That value, over a period of years, gradually increased to the date of said resolutions. It is inconceivable that such a valuable right and interest would be virtually given away by the owner, as would be the case if plaintiff's contention be upheld. To hold that one has committed such an egregious blunder would require evidence of an extremely clear and convincing character. The bank's position has consistently been that no such purpose on its part was contemplated or intended. The record sustains this position. To hold that a person, vested with a valuable right, has voluntarily shifted his position and thereby unfavorably affected such right, there should be no doubt of the intention to do so. It is contrary to human nature and also in violation of the fixed rules of common experience. Lackey v. Macmurdo, 9 La.Ann. 15; La Del Oil Properties v. Magnolia Petroleum Company, 169 La. 1137, 126 So. 684.

For the reasons herein assigned, the judgment appealed from is affirmed with costs.