## PORTER-WADLEY LUMBER CO. et al. v. BAILEY.

### No. 9300.

Circuit Court of Appeals, Fifth Circuit.

April 1, 1940.

Rehearing Denied June 13, 1940.

John B. Files and J. H. Jackson, both of Shreveport, La., for appellants.

A. S. Drew, of Minden, La., for appellee.

Before FOSTER, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, Circuit Judge.

Alleging ownership of a certain tract of land in Webster Parish, Louisiana, and prescriptive title to the minerals thereunder, Bailey filed this suit in the state court for slander of title. His petition prayed for cancellation of an affidavit filed by the appellants, Porter-Wadley Lumber Company, in liquidation, J. K. Wadley, Mrs. Lillian J. Porter, Margaret Porter, Mrs. W. R. Grim, Emaline Grim Fuller, Loretta Grim Thomas, and Joe M. Wilson, in the conveyance records of said parish, which purported to show them as owners of an outstanding mineral interest in said tract, as well as of a certain mineral lease granted by appellants on November 29, 1933, to the

Louisiana Oil Refining Company. On petition of appellants, the case was ordered removed to the court below, whereupon the appellants answered, admitting the alleged slander and asserting title to the mineral rights. From an adverse judgment, they have appealed to this court.

Prior to 1916, the tract of land involved in this suit, together with others, was owned by the Porter-Wadley Lumber Company, an Arkansas corporation authorized to do business in Louisiana. On February 12, 1916, it sold these lands to the German-American Investment Company, an Iowa corporation. In the deed the vendor reserved, for a term of thirty-five years, "all oil, gas, sulphur and mineral rights of any and every description that may exist or be found in and under the lands herein conveyed," and obligated itself to pay to the owner of the land one-half of all net revenue derived from the sale of minerals. On May 3, 1917, the Porter-Wadley Lumber Company was dissolved in accordance with the laws of Arkansas, and three of the stockholders were named as commissioners to liquidate and settle the affairs of the corporation and to distribute the proceeds of its property.

Bailey acquired the tract of land in question on March 25, 1924, and has been in possession ever since. His title derives from the German-American Investment Company, and his ownership of the surface has not been challenged. All intermediate transfers referred to and recognized the reservation of minerals in the deed from the Porter-Wadley Lumber Company, so the plaintiff admittedly took with full knowledge of the outstanding mineral interest.

On February 23, 1926, the Porter-Wadley Lumber Company, in liquidation, executed an oil and gas lease to W. R. Ramsey for a period of three years. On March 13, 1926, this lease was concurred in and ratified by Bailey. Pursuant to the terms thereof, the lessee commenced a well on December 26, 1926, but it turned out to be a dry hole. On January 5, 1928, appellants entered into a lease with C. H. Lyons and others. A well was commenced on April 9, 1928, which produced gas in paying quantities until May 19, 1930. During this period of production, Bailey received half of the royalties. Other leases were made by appellants on June 9, 1930, and November 29, 1933, to the Pure Oil Company and the Louisiana Oil Refining Company, respectively, and, under them, Bailey received half of the net bonuses, rentals, and royalties. This suit was filed May 2, 1938.

Appellants contend that the reservation of the minerals by the Porter-Wadley Lumber Company in 1916 constituted either a lease or a mandate coupled with an interest, neither of which, they allege, was susceptible to the prescription of ten years nonuser. They insist that even if it should be determined that their rights were prescriptible, the references to such reservation made in subsequent deeds of the land interrupted any prescription then accruing against the mineral rights. They argue further that upon the dissolution of the Porter-Wadley Lumber Company in 1917, according to the law of Arkansas, its property passed directly to the stockholders, and that since Margaret Porter, one of the stockholders, was a minor and did not reach her majority until 1932, the prescription of the mineral interest was suspended during her minority as to her and the major co-owners as well.

On the same facts, the Supreme Court of Louisiana has decided directly contrary to the appellants' contentions. Munn v. Wadley, 192 La. 874, 189 So. 561. We are bound to follow their determination. Edward Hines Yellow Pine Trustees v. Martin, 268 U.S. 458, 45 S.Ct. 543, 69 L.Ed. 1050; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. In accordance with the opinion in the Munn case, the trial court properly held that the reservation of minerals constituted a real right or servitude, subject to the prescription of ten years; that references made to the reservation in subsequent deeds to the land were not acknowledgments such as would interrupt the prescription then accruing; that, according to the law of Louisiana, title to real estate belonging to a corporation that has been dissolved and is in liquidation cannot be transferred to the stockholders without a written deed or by virtue of a judicial decree; and, therefore, that the minority of one of the stockholders would not suspend prescription.

There was no drilling on the property in question, and prescription accrued on February 12, 1926. Appellants, however, urge that Bailey's ratification of the lease of February 23, 1926, the subsequent drilling operations, and his receipt of bonuses, rentals, and royalties on the

terms set out in the reservation of 1916 were sufficient to constitute a tacit renunciation of prescription. In support of their contention, they cite Articles 3460 and 3461 of the Revised Civil Code of Louisiana. Apparently, appellants' theory is that such renunciation would operate in the same manner as an interruption of prescription, and would renew their servitude for ten years more, or longer. The inconsistency of their position is that they claim to have been thus perpetuated in rights of which they had already been irrevocably divested by operation of law. In order to show a renewal of their servitudes, they must prove Bailey's intention to create new rights, not only his recognition that they may have had some rights in the property. His express ratification of the lease to Ramsey no more indicates an intention to renew than do his alleged implied ratifications of the three subsequent leases by acceptance of rentals thereunder. Acceptance of rentals under such circumstances does not resurrect mineral servitudes which have become prescribed, either on the theory of tacit renunciation or of estoppel. English v. Blackman, 189 La. 255, 179 So. 306. Similarly, drilling on the property will not affect prescription which has already accrued. See La Del Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 1144, 126 So. 684. Having been lost by prescription, these servitudes cannot be recreated in the manner in which appellants have alleged. For the reasons assigned, the judgment appealed from is affirmed.