52 So.2d 531 (1950)
219 La. 160
HAYNES
v.
KING et al.
No. 39099.
Supreme Court of Louisiana.
November 6, 1950.
On Rehearing March 19, 1951.
Further Rehearing Denied April 23, 1951.
*532 Drew & Drew, Minden, Blanchard, Goldstein, Walker & O'Quin, Shreveport, George C. Schoenberger, Jr., and Tinsley Gilmer, New Orleans, amici curiae, for plaintiff-appellant.
Campbell & Campbell, Minden, for defendants-appellees.
HAMITER, Justice.
As the owner and possessor of the Southeast Quarter (SE¼) of Section 13, Township 23 North, Range 10 West, Webster Parish, containing 160 acres more or less, plaintiff, John E. Haynes, instituted this suit to have cancelled from the conveyance records of the named parish a certain instrument which recognizes the several defendants as owners of mineral rights in and under the described land. The theory of the action is that such mineral rights, termed servitudes under our jurisprudence, have become extinguished by the liberative prescription of ten years because of nonuser.
The judgment of the district court rejected the demands of plaintiff and from it he is appealing.
To recite the pertinent facts of the case chronologically, one Ardis C. Burns, plaintiff's author in title, purchased from some of the defendants between December 29, 1927, and January 11, 1930, both dates inclusive, approximately 100 acres of the property in question, the acquisition having been made in separate 20 acre tracts and in each of the deeds a portion of the minerals was reserved. From such vendors the remaining defendants acquired by purchase certain interests in the mineral rights so reserved.
On June 17, 1937, which was prior to the accrual of the liberative prescription on any of the servitudes established by the reservations, the then landowner Ardis C. Burns joined with all of the servitude owners (the defendants) in the execution of an oil, gas and mineral lease in favor of one R. E. Anderson for a primary term of five years. This lease expired on June 17, 1942.
Several months thereafter, specifically on December 16, 1942, Ardis C. Burns (the landowner) and the defendants herein (the servitude claimants) executed together an instrument entitled "Declaration of Interest" in which they declared in part as follows:
"The undersigned certify that we are the legal owners of the oil, gas and other minerals in and under and that may be produced from the following described lands, situated in the Parish of Webster, State of Louisiana, to-wit:
"SE¼ of Section 13, Township 23 N., Range 10 W., estimated to contain 160 acres, more or less.
"The undersigned further certify that our interest in said minerals is subject to that certain oil, gas and mineral lease bearing date as of December 16th, 1942, executed by us in favor of Hunt Oil Company, a Delaware Corporation of Dallas, Texas.
"We further certify that to settle any question of title to the oil, gas and other minerals in and under and that may be produced from the above described lands, the ownership thereof is understood by all parties hereto to be as follows:"
(Here follows a detailed description, including the amount in mineral acres, of the interest owned by each party.)
"This agreement is binding on our heirs, executors, administrators and assigns, and is executed by us to settle any dispute that might exist as to the ownership of the minerals underlying said above described properties as to this date, December 16th, 1942."
Simultaneously with the signing of that instrument Burns and such mineral claimants executed a joint oil, gas and mineral lease (to which reference is made in the declaration) in favor of the Hunt Oil Company, it having a primary term of ten years.
*533 The lease was filed for record in the office of the Clerk of Court (the recorder of conveyances) of Webster Parish on December 17, 1942, but the declaration of interest was not deposited there until December 28, 1942.
On December 19, 1942, or two days after the recordation of the Hunt Oil Company lease but prior to that of the declaration of interest, Ardis C. Burns executed a notarial act by which he transferred and conveyed to the plaintiff herein, John E. Haynes, the 160 acre tract in question. The deed, which reserved and excepted from the conveyance one-fourth of the oil, gas and other minerals in and under the land, was filed for record on December 21, 1942.
When purchasing the property plaintiff, according to his own testimony given at the trial of this case, was informed by Burns that he (Burns) and these defendants had just granted a lease on it to the Hunt Oil Company and also that he (Burns) owned all of the mineral rights in and under the land except about 47 acres (mineral acres) which the others (the defendants) claimed. Plaintiff further testified that no wells had ever been drilled on the land in search of oil or gas.
At the hearing in this court of the appeal of plaintiff, which was from a judgment rejecting his demands, the opening argument of his counsel was only that since the assailed declaration of interest instrument executed by Burns and the defendants was not of record when he acquired the land he was not bound by the transaction which it evidenced under the doctrine of the landmark case of McDuffie v. Walker, 125 La. 152, 51 So. 100. To the same effect is the argument in the brief filed in his behalf. Thus, to quote the brief in full, we find:
"The appellant in this case acquired by deed on December 19, 1942, from Ardis C. Burns, the Southeast Quarter of Section 13, Township 23 North, Range 10 West, Webster Parish, Louisiana, estimated to contain 160 acres, more or less. Said deed was filed for record in the Conveyance Records of Webster Parish, Louisiana, on December 21, 1942. On December 28, 1942, seven days later, there was a document filed for record by the defendants and appellees herein, in which Ardis C. Burns had recognized their interest in certain minerals. This is a suit by Mr. Haynes, appellant herein, to have said document, which was filed for record seven days after his deed was recorded, cancelled from the records as a cloud on his title to the minerals thereunder.
"It appears to us that these facts which are above stated and which are borne out by the record, bring this case under the ruling and doctrine set out first in McDuffie v. Walker, 125 La. 152, 51 So. 100, which has been reaffirmed hundreds of times since; and in our opinion, unless those decisions can be upset, then the judgment of the district court in this case will have to be reversed, and that is what we are asking this court to do.
"Therefore, we respectfully ask that the judgment of the lower court be reversed and judgment rendered in favor of appellant, as prayed for."
However, during the course of the oral argument made by counsel for appellees some of the members of this court raised the additional issues, through questions propounded, of whether the servitudes had prescribed prior to the execution of the two instruments of December 16, 1942, and, if they had, whether the prescribed servitudes could be and were revived. Answering, appellees' counsel contended and argued (1) that the joint five year lease granted in June, 1937, to R. E. Anderson (prescription had not then accrued), together with other acts of the parties, effected an interruption of the ten year prescription then running and caused it to commence anew as of that date; and (2) that if such lease be construed only as extending the prescriptive period for and during its five year term, resulting in the accrual of prescription in June, 1942, then the execution on December 16, 1942, of the joint lease to the Hunt Oil Company and the declaration of interest constituted a renunciation of the accrued prescription.
The joint lease of June, 1937, did not serve, in our opinion, to interrupt the running of prescription, as counsel first contended and argued. Neither the language *534 thereof nor any circumstances attending its execution disclose an intention of the landowner to so interrupt; consequently, its only effect, under our jurisprudence, was to provide an extension of the servitudes for the duration of the lease's five year term, or until June, 1942, at which time prescription accrued. See Achee v. Caillouet, 197 La. 313, 1 So.2d 530.
But, as appellees' counsel argued under the second contention, there appears to have resulted from the instruments of December 16, 1942, a renunciation of the accrued prescription and an extension of the servitudes for and during the ten year primary term of the Hunt Oil Company oil, gas and mineral lease.
On this point the Revised Civil Code declares:
"RenunciationAcquired and unacquired prescription.One can not renounce a prescription not yet acquired, but it is lawful to renounce prescription when once acquired." Article 3460.
"Methods of making renunciation.Such renunciation of prescription is either express or tacit.
"A tacit renunciation results from a fact which gives a presumption of the relinquishment of the right acquired by prescription." Article 3461.
"Capacity to renounce right.To be capable of renouncing the right of prescription, one must be capable of alienating his property." Article 3462.
It is true that Burns, the landowner, did not expressly renounce the accrued prescription. His execution of the two acts of December 16, 1942, however, furnishes a presumption of the relinquishment of the rights so acquired, thereby resulting in a tacit renunciation. In the declaration of interest Burns and these defendants declared that they were entering into the agreement, which described in detail the several interests owned and which also announced that it was binding on the heirs, executors, administrators and assigns, "to settle any dispute that might exist as to the ownership of the minerals underlying said above described properties as to this date, December 16, 1942." And in the ten year oil, gas and mineral lease granted to Hunt Oil Company on that date provision was made for the participation by all of the mineral owners (including these defendants) in the various benefits to flow from the contract, particularly delay rentals and royalties. Thus Burns, by these acts, clearly evidenced an intention to do something, and that something was to declare and recognize the rights of defendants to continue in the ownership of their respective mineral interests or servitudes and to benefit therefrom. If he had not so intended to relinquish his acquired prescriptive rights why the necessity and trouble of executing the declaration respecting the settling of "any question of title to the oil, gas and other minerals", and why was he willing to join with the defendants in granting the new lease and in permitting them to participate in the delay rentals and royalties therefrom for a period of ten years? The intention to relinquish is further disclosed by his statement to Haynes (the plaintiff herein) at the time of the sale that the defendants had just joined him in the execution of the Hunt lease and that he (Burns) owned all of the mineral rights except about 47 acres which the defendants claimed (their servitudes actually covered 47½ mineral acres).
Considering then that Burns tacitly renounced the accrued prescription and extended the servitudes for ten years from December 16, 1942 (the duration of the Hunt lease), we now seek to determine the only issue argued here by appellant (plaintiff), it being whether or not he, under the doctrine of the case of McDuffie v. Walker, supra, was bound by the transaction between Burns (from whom he acquired) and the defendants of which he had actual knowledge. The doctrine so invoked is that unrecorded contracts affecting immovable property are null and void as to third persons relying on the public records, actual knowledge thereof not being equivalent to registry.
In determining this issue it is to be remembered that with respect to the two instruments executed by Burns and the defendants on December 16, 1942, the Hunt lease was placed on the conveyance records *535 of Webster Parish on December 17, 1942, whereas the declaration of interest did not arrive there until December 28, 1942; and that, meanwhile, Haynes obtained his deed from Burns on December 19, 1942, and filed it for record on December 21, 1942.
A study of our jurisprudence discloses that the numerous decisions of this court founded on the doctrine of McDuffie v. Walker, supra, were in cases involving contracts creating or establishing real rights or titles. In the instant case the declaration of interest of which plaintiff complains did not create the servitudes or real rights claimed by defendants. They were established through reservations contained in the deeds by which Burns acquired in the years 1927 and 1930, both inclusive, and those deeds and reservations were of record when plaintiff purchased. Also of record at the time were the joint leases to R. E. Anderson (1937) and Hunt Oil Company (1942), respectively, the latter of which recited a primary term of ten years. When purchasing, therefore, plaintiff had record (in addition to his admitted actual) notice of the creation of the servitudes (by the recorded reservations) and also of defendants' assertion of mineral ownership (by the joint leases).
At least two ways for hindering the loss by prescription of a mineral servitude have been recognized in our jurisprudence, one being by the use of the mineral rights (an interruption) and the other by the minority of an owner or a co-owner (a suspension), each to occur before the accrual of the prescription. And in neither instance has it been held that a third party purchaser of the land is not bound thereby unless evidence of the fact providing the hindrance appears of record. Rather, the purchaser, by reason of the recordation of the act creating the servitude, has been required to determine from facts dehors the record whether an interruption or suspension of prescription has occurred. He, in other words, could not rely on the public records to ascertain if the servitude had been lost; he, with record notice of its creation, accepted the property subject to it, and if in fact it was still valid his acquisition was burdened therewith.
The instant case provides still another method for hindering the loss by prescription of a mineral servitude, it being by means of a renunciation which the above quoted articles of the Revised Civil Code specifically authorize. Of course, as before shown, one cannot renounce a prescription not yet accrued; but he may renounce it, either expressly or tacitly, after it has accrued. And from the renunciation, which is merely a relinquishment of the renouncer's rights acquired by prescription, there results a continuance of the original obligation.
By his execution of the declaration of interest Burns created no new servitudes. What he did was to waive, relinquish, or renounce his accrued prescriptive rights, thereby setting aside the prescription that had run in his favor on the already created servitudes and continuing them in full force and effect. Just as with the hindrance of an accruing prescription by means of use or minority, it was not necessary that plaintiff have public notice of the renunciation for it to be binding on him. Plaintiff had record, as well as actual, knowledge of the creation of those servitudes and of defendants' claims thereunder, and he took the property subject thereto, whether the servitudes were valid or invalid. At the time of his acquisition, it so happened, they were outstanding and valid.
For the reasons assigned the judgment appealed from is affirmed.
McCALEB, Justice, concurring.
At the time of submission of this case, I entertained doubt as to the correctness of defendants' position but, after a study of the majority opinion, I am convinced that the views therein expressed are sound. As I now see it, the doctrine of McDuffie v. Walker, 125 La. 152, 51 So. 100, instead of supporting plaintiff, actually operates as a bar to his actionfor, when he bought the property, the mineral servitude was registered on the public records as a notice to all that the land was thus encumbered. *536 While it is true that the record exhibited that more than ten years had elapsed from the date upon which the servitude had been granted, plaintiff was not entitled to assume that it had expired by nonuser as the question of accrual of prescription could well have depended upon facts dehors the record. Hence, since the servitude was a matter of record, he should have required his vendor to have it cancelled and erased before he accepted title if he wished to have the land released from its effect. By failing so to do, he acquired the property burdened with the servitude and, therefore, could not obtain any greater rights with respect to its release than those of his grantor. Accordingly, if the servitude is in esse as between his grantor and the defendants, plaintiff cannot succeed in obtaining its erasure.
On the question of whether plaintiff's grantor has renounced an accrued prescription, I believe that the majority opinion correctly holds that the instrument entitled "Declaration of Interest" was an effective renunciation under Articles 3460, 3461 and 3462 of the Civil Code. And I am satisfied that those articles are applicable to prescription of nonuser of mineral servitudes in view of Article 3529 which specifically declares that the prescription operating as a release from debt "* * * has also the effect of releasing the owner of an estate from every species of real rights * * *".
I subscribe to the majority opinion.
FOURNET, Chief Justice, dissenting.
I cannot subscribe to the majority opinion, holding in effect, that an instrument affecting immovables is binding on third parties although not recorded.
The instrument in controversy is nothing more than a simple declaration of the mineral ownership of the respective parties thereto under a servitude that was prescribed at the time of its execution. The instrument does nothing more than declare that those joining therein were the then legal owners of the oil, gas, and other minerals in and under the land therein described in the proportions therein set out; that their ownership was subject to the oil and gas lease that day executed by them; and that this declaration of interest was binding on their heirs, executors, administrators, and assigns. The intention of the parties in executing the instrument is set out in two different ways in the instrument itself, but it amounts to the same thing. It is first stated that the instrument is executed "to settle any question of title to the oil, gas and other minerals" in the land, and, later, that it is being executed "to settle any dispute that might exist as to the ownership of the minerals underlying said above described properties as of this date, December 16th, 1942," meaning, unquestionably, any dispute as to this interest among the parties themselves.
The parties to this instrument obviously believed they were the then owners of the minerals in the proportions set out and certified to. The instrument necessarily cannot be an acknowledgment, for the jurisprudence of this state is that once prescription has accrued, no acknowledgment, regardless how vigorously expressed, can serve to begin its running again. In fact, even where prescription has not accrued but is still running, our jurisprudence demands that the intention to acknowledge be expressed in no uncertain terms, and can never be established by inference.
The learned author of the majority opinion, applying the articles of the Revised Civil Code declaring that one capable of alienating his porperty (Article 3462), may "renounce prescription when once acquired" (Article 3460), either tacitly or expressly (Article 3461), to this mineral servitude, concluded that although the landowner, Ardis C. Burns (plaintiff's author in title), did not expressly renounce the accrued prescription by his execution of this instrument and the lease therein referred to, he, nevertheless, "furnishes a presumption of the relinquishment of the rights so acquired, thereby resulting in a tacit renunciation," and that by such acts he "extended the servitudes for ten years from December 16, 1942." As otherwise expressed in the opinion; "By his execution of the declaration of interest Burns created no new servitudes. What he did was to waive, relinquish, or renounce his accrued prescriptive rights, *537 thereby setting aside the prescription that had run in his favor on the already created servitudes and continuing them in full force and effect." His final holding is that since the act creating the original servitude was of record at the time the plaintiff purchased the property, the facts with respect to its continuance in existence, whether by acknowledgment or renunciation may be determined by the purchaser by facts dehors the conveyance records.
If these articles (to be found under the general provisions with respect to prescription to be found in Section 1 of Chapter 3 of Title XXIII dealing with occupancy, possession, and prescription) can be said to apply to mineral servitudes at all, the author of the majority opinion obviously overlooked the provisions of the Revised Civil Code declaring that while one can renounce what the law has established in his favor, this may be done only "when the renunciation does not affect the rights of others". Article 11.
In the first place, it is my firm conviction that the renunciation of any prescription affecting immovable property, once it has accrued, can only bind a third party when it is contained in a written instrument that unmistakably reflects such intention, and then only after such instrument has been duly recorded; further, that the only acts from which a tacit renunciation can be inferred, if such renunciation can be applied to mineral servitudes, are those exercised by the servitude owner after the prescription has run without interference on the part of the landowner, who does not then choose to assert or avail himself of the rights that have thus accrued in his favor under the prescription laws of this state.
The case of Porter-Wadley Lumber Co. v. Bailey, 110 F.2d 974, 976, decided by the United States Circuit Court of Appeals for the Fifth Circuit, furnishes an excellent example. There, after the mineral servitude imposed on land had lapsed and become extinguished for non-use during the 10 year prescription period, the original servitude owner executed a mineral lease. This lease was later concurred in and ratified by the landowner. In addition, the landowner participated in the bonuses, rentals, and royalties flowing from this mineral lease. It was the contention of these purported mineral owners, in a suit subsequently instituted by the landowner to have cancelled an instrument recorded by them setting out their ownership of an outstanding mineral interest in the property, that the landowner's ratification of the mineral lease executed after the servitude had prescribed and his participation in the benefits derived thereunder were sufficient to constitute a tacit renunciation of prescription under Articles 3460 and 3461 of the Revised Civil Code of Louisiana. In denying this contention the court points out:
"Apparently, appellants' theory is that such renunciation would operate in the same manner as an interruption of prescription, and would renew their servitude for ten years or more, or longer. The inconsistency of their position is that they claim to have been thus perpetuated in rights of which they had already been irrevocably divested by operation of law. In order to show a renewal of their servitudes, they must prove Bailey's intention to create new rights, not only his recognition that they may have had some rights in the property. * * * Having been lost by prescription, these servitudes cannot be recreated in the manner in which appellants have alleged."
If the majority holding prevails, we will be faced with an anomalous situation, for although servitudes can be created only in the manner that a title can be conveyed, that is, by notarial act or by an act under private signature duly acknowledged, and that such an act in order to have effect upon third parties must be duly recorded in the conveyance records of the parish in which the property is situated, such a servitude may, nevertheless, although concededly extinguished under our law by prescription at the time a third party purchases the property, be revived and placed in operation for an additional 10 years or more by a tacit renunciation of the accrued prescription that need not be in writing and may be established by inferences, assumptions, and presumptions, and, further, may prejudice the rights of third persons who purchased the *538 property when these rights were no longer in existence without recordation.
If this is permitted, then an acknowledgment can interrupt the running of prescription to the detriment of third parties without recordation, and the exact status of a servitude, once it has been established, can never be determined with any degree of certainty, leading, inevitably, to the far greater evil of fraud: for there will be no restraint upon those unscrupulous persons who have once held a mineral interest in a newly discovered territory, and which interest has long since ceased to exist, that will prevent them from producing instruments (even those executed the night before and antedated) purporting to be a renunciation of the prescription by the landowner and demanding that they be accorded the right to participate in the new wealth.
I must, therefore, respectfully dissent.

On Rehearing
MOISE, Justice.
Mr. Justice Hamiter was tolerant in that he subscribed to the granting of a rehearing, feeling that the importance of the case justified this action even though he was convinced of the correctness of his original opinion.
We now seek the reason why this matter has become so controversial in the process of its judicial development when the pleadings and the judgment appealed from demonstrate the issues necessary for a decision. Furthermore, there is no dispute of facts revealed in the evidence. Not a single witness contradicted any other witness, yet, there is a legal gulf between the facts as applied to the law and the factual design on which the majority of the court has based its decision. We do not mean to say that there was a failure in the majority opinion to narrate all of the important facts. The opinion itself shows that it did. But our contention now is one of substance on application of the law to the facts and the applicable facts to the issue must be accentuated.
Chief Justice Fournet in his dissent said that he could not subscribe to the doctrine that an instrument affecting immovables is binding on third persons, although not recorded. This is the essential of the main issue in the case, but a discussion of the incidentals will be necessary on account of what has gone before.
The instrument in question, styled a "Declaration of Interest", dated December 16, 1942, relates to a mineral servitude. A mineral servitude is a terminable property right. Act No. 6 of the 2d Extra Session of 1950, LSA-RS 9:1105. A servitude on immovable property is lost by nonuse for 10 years. This is the provision of Article 3546 of the Revised Civil Code. The pleadings and proof of record disclose that the servitude was lost on June 16, 1942, and nothing was done until December 17, 1942; and we say that, although a liberative prescription of a mineral servitude may be interrupted by an acknowledgment which was made prior to the accrual of prescription, the acknowledgment will not be sufficient to renounce after the accrual of prescription.
In English v. Blackman, 189 La. 255, 179 So. 306, our court has pronounced the servitude after the accrual of prescription as a dead thing. This servitude has been dead for six months. There can be no resurrection. It can only be recreated by a new agreement. Besides, this court has established several strict requirements with which the acknowledgment intended to interrupt a liberative prescription of the servitude must comply:
"The acknowledgment must be express and certain. La Del Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684; Baker v. Wilder, 204 La. 759, 16 So.2d 346. It must have been made with the intent and for the purpose of interrupting prescription. Lewis v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859; Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75. It must adequately describe the property to which it applies. Frost Lumber Industries v. Union Power Co., 182 La. 439, 162 So. 37; Cox v. Acme Land & Investment Co., 192 La. 688, 188 So. 742; Achee v. Caillouet, 197 La. 313, 331, 1 So.2d 530, 536. It must be in writing because mineral rights are classified as immovables. Noble v. Plouf, *539 154 La. 429, 97 So. 599. Furthermore, the acknowledgment must be recorded in order to effect third persons. Goldsmith v. McCoy, 190 La. 320, 182 So. 519." 23 Tul.L. Rev. 412. The last is essential, the last is the issue in this case, and the last must be given sanctity. Because we have no mineral Code our problem is to make the law so exact that "he who runs may read", and so that a great industry can operate on a practical basis.
When the servitude has been lost or extinguished by non-usage for ten years, that does not leave the landowner burdened with a natural obligation to the mineral owner, regardless of whether the mineral owner acquired these mineral rights from him or from a predecessor in title. Our courts have decided the following: "The exercise of mineral rights by drilling will not revive the servitude after prescription has accrued. Porter-Wadley Lumber Co. v. Bailey, 5 Cir., 1940, 110 F.2d 974; La Del Properties v. Magnolia Petroleum Co., 169 La. 1137, 1143, 126 So. 684, 687. The grantor does not renounce the prescription by accepting rental payments after the prescription has run. English v. Blackman, 189 La. 255, 179 So. 306; White v. Hodges, 201 La. 1, 9 So.2d 433. The language of the cases indicates that a mineral servitude cannot be revived after it is extinguished by prescription. Porter-Wadley Lumber Co. v. Bailey, supra; English v. Blackman, supra; Cox v. Acme Land & Investment Co., 192 La. 688, 188 So. 742; Deas v. Lane, 202 La. 933, 13 So.2d 270; Wall v. United Gas Public Service Co., La.App., 181 So. 562, 567." 23 Tul.L.Rev. 413.
The learned judge of the district court said that the instrument styled "Declaration of Interest", sought to be cancelled, is effective as an acknowledgment and an interruption of prescription. The error of law is self-evident. The acknowledgment was made after the accrual of prescription and, secondly, this instrument cannot affect the rights of third persons unless recorded.
The Articles of the Revised Civil Code relating to registry are clear and consistent:
"Art. 2261. Whenever an act under private signature shall be taken to the register to be recorded, as required by the preceding article, he may, if thereunto requested by the parties, take an acknowledgment of their signatures, which acknowledgment shall be recorded with the act under private signature.

* * * * * *
"Art. 2265. All sales of immovable property made by any sheriff or other officer, by virtue of any execution or other order of court; all marriage contracts made within this State, tending in anywise to convey, transfer, assure or affect the estates of the parties, or being only intended to ascertain the dotal rights of the wife, or that her marriage portion is liable to some reserves, or stipulated to be paraphernal or extra dotal property; and all final judgments affecting immovable property shall be recorded in the parish where the immovable property is situated.
"Art. 2266. All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
"The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer."
These articles must be complied with religiously. The instrument dated December 16, 1942, styled "Declaration of Interest", in no wise affected the rights of the plaintiff. The recordation of that instrument after plaintiff's acquisition does constitute a cloud on plaintiff's mineral ownership and should be cancelled and erased. "There is no virtue in sinning against light or in persisting in palpable error, for nothing is settled until it is settled right."
For the reasons assigned, the judgment appealed from is annulled, reversed and set aside; and
It is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, John E. Haynes, decreeing that the defendants herein (with the exception of Ardis C. Burns, as to the undivided one-fourth *540 interest reserved by him in his sale to plaintiff) have lost all claims to any oil, gas and other mineral rights in and under and that may be produced from the Southeast Quarter of Section 13, Township 23 North, Range 10 West, in Webster Parish, Louisiana, estimated to be 160 acres, more or less; and,
It it further ordered, that the "Declaration of Interest" dated December 16, 1942, filed for record in the Conveyance Records of Webster Parish, Louisiana, on December 28, 1942, and recorded at Vol. 157, Page 559, is of no force and effect, and accordingly, be cancelled from the said records.
Defendants-Appellees to pay all costs. The right is reserved to the defendants to apply for a rehearing.
McCALEB, Justice, concurring.
I adhere to the view stated in my previous concurring opinion in this case that plaintiff is not entitled to the protection of the law of registry as he accepted title to the land burdened with a recorded servitude which may or may not have been in esse. Accordingly, he stands in the shoes of his grantor.
However, after a reconsideration of the matter on rehearing, I am persuaded that the Articles of the Civil Code dealing with the renunciation of an accrued prescription, Articles 3460, 3461 and 3462, cannot be applied to mineral servitudes without upsetting or rendering unstable the mineral law of this State which has been developed by the pronouncements of this court. It is firmly settled that a sale or reservation of a mineral right constitutes a dismemberment of ownership of the land, Long-Bell Petroleum Co., Inc. v. Tritico, 216 La. 426, 43 So. 2d 782 and cases there cited, and that, upon the accrual of the prescription of nonuser, "the outstanding mineral interests revert to the person owning the land * * *". Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610. Hence, since the extinguishment of the servitude revested the minerals in plaintiff's grantor, the only way a new servitude could be created was by a title as a tacit renunciation of prescription could not resuscitate the real right which had already expired and title to which had become merged with the ownership of the surface of the land.
It thus appears that the Articles of the Civil Code on renunciation of prescription cannot be given effect as to mineral servitudes since those Articles would permit the renewal or creation of a discontinuous nonapparent servitude, either expressly or tacitly, and not by title, as provided by Article 766 of the Code.
For these reasons, I concur in the decree.
HAMITER, Justice, dissenting.
I not only subscribed to the granting of this rehearing, but I also made the recommendation from which it resulted. Still entertaining the views which I expressed as the author of the original majority opinion, I did this solely for the reason that the issues involved are not free of difficulty in solving and, too, the controversy is of vast importance throughout the State with respect to dealings in mineral and royalty rights.
The case presents two issues of law. These are: (1) As between Ardis C. Burns (plaintiff's grantor) and the defendants did the instrument styled Declaration of Interest, executed by these persons on December 16, 1942, serve to revive the prescribed mineral rights which had been reserved by defendants through duly recorded authentic acts on and prior to January 11, 1930? (2) If the mineral rights were so revived and were outstanding when plaintiff purchased the land, did he take subject to them, he having had actual knowledge of their existence although he had no recorded notice of the executed Declaration of Interest?
These issues arise, and the confusion here occurs, as a result of the established jurisprudence of this court to the effect that a sale or a reservation of mineral rights creates a servitude which is governed by the provisions of the Revised Civil Code relating to the subject of servitudes, including Article 789 reciting that a right to servitude is extinguished by the nonusage of the same during ten years. Were it not for the application of the servitude articles to mineral rights, held to be proper by that *541 jurisprudence, these defendants would have to be recognized as the unqualified owners cf real interests or rights in and to the affected land inasmuch as they hold under duly recorded contracts or deeds effective against all the world, including this plaintiff; and the issues above stated would be non-existent.
Heretofore, I have questioned the soundness of such jurisprudence. See concurring opinion in Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746. It is my belief that the sale or reservation of minerals represents merely divesture by the landowner of a definite interest in the immovable and is governed only by those codal provisions which deal with conventional obligations. As is indicated by the language of the servitude articles of the Civil Code such a sale or reservation does not and cannot result in the establishment of either a personal or a predial servitudethe only two kinds of servitudes known to the civil law. It does not and cannot result in a personal servitude, for a servitude of that nature terminates with the life of the person for whose benefit it is established. Civil Code, Article 646. Surely mineral rights are not extinguished by the death of the purchaser or the owner thereof; they are heritable. Moreover, the sale or reservation of minerals does not and cannot result in a predial servitude, for a servitude of that kind is "a charge laid on an estate for the use and utility of another estate belonging to another owner." Civil Code, Article 647. Indisputably a purchase of mineral rights is not for the use and utility of any estate; it is for the purchaser's individual benefit, consummated with the hope of personal financial gain.
I realize and concede, of course, the many advantages that can and do flow from the prescribing of mineral rights after the lapse of a ten year period. But the applicable prescription should be one provided for in a special statute or mineral code dealing specifically and exclusively with oil and gas rights and setting forth the various necessary rules, especially as to suspension and interruption, peculiarly appropriate thereto. The application to minerals of the several prescriptive provisions of our Civil Code, including that concerning servitudes, should not be attempted, for when they were adopted oil and gas rights were unknown to the redactors and, therefore, they were not intended to be appropriate. Too, a continuance of the attempts to apply to mineral rights the present codal provisions regarding servitudes and prescription will add to the confusion already existing in our oil and gas jurisprudence.
But irrespective of my above announced individual views, a rule of property has been established by the discussed jurisprudence and, until the Legislature orders otherwise, we must, as best we can, determine disputes involving the prescribing of minerals in the light of the mentioned codal articles which treat of servitudes and prescription.
Adverting then to the first issue of this controversy, to me it seems necessary to hold, in view of Civil Code Article 3461, that as between plaintiff's grantor (Burns) and these defendants the executed Declaration of Interest served to revive the prescribed mineral rights originally reserved by the latter. This article appears in the Civil Code in Section I (General Provisions) of Chapter 3 (Of Prescription) and, when considered along with the other articles of the section, its application evidently was intended for prescriptions generally, both liberative and acquisitive. This being true there resulted at least a tacit renunciation of Burns' accrued prescriptive rights, in accordance with said Article 3461, when he executed the authentic declaration solemnly recognizing defendants to be the owners of the disputed mineral interests, the fact of execution having furnished "a presumption of the relinquishment of the right acquired by prescription."
The other issue in the casewhether this plaintiff took the land subject to the recognized and outstanding mineral rights of defendantscalls in question Civil Code Article 2266 as interpreted and applied in McDuffie v. Walker, 125 La. 152, 51 So. 100. In substance, such article provides that all sales, contracts and judgments respecting immovable property shall only affect third persons from the time of the recording *542 thereof. In the instant case, I think, there has been a full compliance with the requirement of this codal provision.
The only sales or contracts affecting immovables involved here (there are no judgments) are those by or through which defendants originally reserved the mineral rights; and the documents evidencing them were of record when plaintiff purchased the land. The unrecorded Declaration of Interest, executed by plaintiff's grantor, cannot be considered a contract within the meaning of such article. "A contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement." Civil Code, Article 1761. The renunciation of accrued prescription such as is found here, or even the interruption by acknowledgment of a running prescription, does not involve an agreement at all. Each constitutes nothing more that a waiver or relinquishment by the landowner of his prescriptive rights. It is entirely possible, as a matter of fact, for a landowner to effect such a waiver or relinquishment (through the execution of a renunciation or acknowledgment document) even without the knowledge of the mineral owner, in which case it could not be correctly said that there was an "agreement" or a "contract" between the parties. Furthermore, inasmuch as a renunciation of accrued prescription may be tacit, Article 3461, the recording of a tacit renunciation surely was never contemplated by the redactors of the Civil Code.
In my opinion the recording of a renunciation or acknowledgment document (with reference to liberative prescription) is no more necessary to affect third persons than the recording of evidence showing usage of mineral rights or of an order of the Commissioner of Conservation unitizing acreage for drilling purposes, the placing of record of each of which is not required although each has been held to interrupt the running of prescription.
True, as pointed out in the majority opinion on this rehearing, this court observed in Goldsmith v. McCoy, 190 La. 320, 182 So. 519, 522, that "* * * a contract, whether intended to create or acknowledge an existing discontinuous servitude or a continuous nonapparent servitude against which prescription was accruing, in order to affect third parties in good faith, must be recorded in conformity to the law of registry in this State." But this observation was obiter dicta, for the court immediately thereafter held: "But even if these unrecorded documents were binding upon the plaintiff as a third person, they would not help the defendant's case." And the reason assigned for this holding was that there was nothing in the documents to show or even indicate that the owners in executing them intended to interrupt the running of prescription. Moreover, the Goldsmith decision made no reference to the established jurisprudence to the effect that evidence of the interruption of an accruing liberative prescription need not be recorded to affect third persons. White v. Ouachita Natural Gas Company, Inc., 177 La. 1052, 150 So. 15; Baird v. Atlas Oil Co., 146 La. 1091, 84 So. 366.
It is my conclusion, therefore, that this plaintiff took the land subject to the recognized and outstanding mineral rights of these defendants, notwithstanding that the discussed Declaration of Interest was not of record when he purchased.
For the above reasons, as well as those which I assigned originally, I respectfully dissent from the majority holding on this rehearing.