FOURNET, Chief Justice,
dissenting.
I cannot subscribe to the majority opinion, holding in effect, that an instrument affecting immovables is binding on third parties although not recorded.
The instrument in controversy is nothing more than a simple declaration of the mineral ownership of the respective parties thereto under a servitude that was prescribed at the time of its execution. The instrument does nothing more than declare that those joining therein were the then legal owners of the oil, gas, and other minerals in and under the land therein described' in the proportions therein set out; that their ownership was subject to the oil and gas lease that day executed by them; and that this declaration of interest was binding on their heirs, executors, administrators, and assigns. The intention of the parties in executing the instrument is set out in two different ways in the instrument itself, but it amounts to the same thing. It is first stated that the instrument is executed “to settle any question of title to the oil, gas and other minerals” in the land, and, later, that it is being executed “to settle any dispute that might exist as to the ownership of the minerals underlying said above de *175 scribed properties as of this date, December 16th, 1942,” meaning, unquestionably, any dispute as to this interest among the parties themselves.
The parties to this instrument obviously believed they were the then owners of the minerals in the proportions set out and certified to. The instrument necessarily cannot be an acknowledgment, for the jurisprudence of this state is that once prescription has accrued, no acknowledgment, regardless how vigorously expressed, can serve to begin its running again. In fact, even where prescription has not accrued but is still running, our jurisprudence demands that the intention to acknowledge be expressed in no uncertain terms, and can never be established by inference.
The learned author of the majority opinion, applying the articles of the Revised Civil Code declaring that one capable of alienating his porperty (Article 3462), may “renounce prescription when once acquired” (Article 3460), either tacitly or expressly (Article 3461), to this mineral servitude, concluded that although the landowner, Aráis C. Burns (plaintiff’s author in title), did not expressly renounce the accrued prescription by his execution,of this instrument and the lease therein referred to, he, nevertheless, “furnishes a presumption of the relinquishment of the rights so acquired, thereby resulting in a tacit renunciation,” and that by such acts he “extended the servitudes for ten years from December 16, 1942.” As otherwise expressed in the opinion; “By his execution of the declaration of interest Burns created no new servitudes. What he did was to waive, relinquish, or renounce his accrued prescriptive rights, thereby setting aside the prescription that had run in his favor on the already created servitudes and continuing them in full force and effect.” His final holding is that since the act creating the original servitude was of record at the time, the plaintiff purchased the property, the facts with respect to its continuance in existence, whether by acknowledgment or renunciation may be determined by the purchaser by facts dehors the conveyance records.
If these articles (to be found under the general provisions with respect to prescription to be found in Section 1 of Chapter 3 of Title XXIII dealing with occupancy, possession, and prescription) can be said to apply to mineral servitudes at all, the author of the majority opinion obviously overlooked the provisions of the Revised Civil Code declaring that while one can renounce what the law has established in his favor, this may be done only “when the renunciation does not affect the rights of others”. Article 11.
In the first place, it is my firm conviction that the renunciation of any prescription affecting immovable property, once it has accrued, can only bind a third party when it is contained in a written instrument that unmistakably reflects such intention, and then only after such instrument has been duly recorded; further, that the only acts *177 from which a tacit renunciation can be inferred, if such renunciation can be applied to mineral servitudes, are those exercised by the servitude owner after the prescription has run without interference on the part of the landowner, who does not then choose to assert or avail himself of the rights that have thus accrued in his favor under the prescription laws of this state.
The case of Porter-Wadley Lumber Co. v. Bailey, 110 F.2d 974, 976, decided by the United States Circuit Court of Appeals for the Fifth Circuit, furnishes an excellent example. There, after the mineral servitude imposed on land had lapsed and become extinguished for non-use during the 10 year prescription period, the original servitude owner executed a mineral lease. This lease was later concurred in and ratified by the landowner. In addition, the landowner participated in the bonuses, rentals, and royalties flowing from this mineral lease. It was the contention of these purported mineral owners, in a suit subsequently instituted by the landowner to have cancelled an instrument recorded by them setting out their ownership of an outstanding mineral interest in the property, that the landowner’s ratification of the mineral lease executed after the servitude had prescribed and his participation in the benefits derived thereunder were sufficient to constitute a tacit renunciation of prescription under Articles 3460 and 3461 of the Revise'd Civil Code of Louisiana. In denying this contention the court points out:
“Apparently, appellants’ theory is that such renunciation would operate in the same manner as an interruption of prescription, and would renew their servitude for ten years or more, or longer. The inconsistency of their position is that they claim to have been thus perpetuated in rights of which they had already been irrevocably divested by operation of law. In order to show a renewal of their servitudes, they must prove Bailey’s intention to create new rights, not only his recognition that they may have had some rights in the property. * * * Having been lost by prescription, these servitudes cannot be recreated in the manner in which appellants have alleged.”
If the majority holding prevails, we will he faced with an anomalous situation, for although servitudes can be created only in the manner that a title can be conveyed, that is, by notarial act or by an act under private signature duly acknowledged, and that such an act in order to have effect upon third parties must be duly recorded in the conveyance records of the parish in which the property is situated, such a servitude may, nevertheless, although concededly extinguished under our law by prescription at the time a third party purchases the property, be revived and placed in operation for an additional 10 years or more by a tacit renunciation of the accrued prescription that need not be in writing and may be established by inferences, assumptions, and presumptions, and, further, may prejudice the rights of third persons who purchased the *179 property when these rights were no longer in existence without recordation.
If this is permitted, then an acknowledgment can interrupt the running of prescription to the detriment of third parties without recordation, and the exact status of a servitude, once it has been established, can never be determined with any degree of certainty, leading, inevitably, to the far greater evil of fraud: for there will be no restraint upon those unscrupulous persons who have once held a mineral interest in a newly discovered territory, and which interest has long since ceased to exist, that will prevent them from producing instruments (even those executed the night before and antedated) purporting to be a renunciation of the prescription by the landowner and demanding that they be accorded the right to participate in the new wealth. .
I must, therefore, respectfully dissent.