ROGERS, Justice.
 

 The plaintiff, Levi C, Cox, is the owner of the S% of NWy4 of NE% and SW}4 or NE14 of Section 22, Township 21 North, Range 10 West, in Webster Parish. On September 21, 1922, Cox conveyed to G. E. McFadin, by deed duly recorded, an undivided one-half interest in the oil, gas and other minerals lying in and under the
 
 *691
 

 sy2
 
 of NW% of NE% and Ny2 of SW% of
 
 NE%.
 
 of Section 22, hereinafter for convenience designated as Tract “A”. Cox instituted this suit to have declared extinguished by the prescription of ten years’ non-user an undivided one-sixth interest in the McFadin servitude claimed through mesne conveyances by the defendant Acme Land & Investment Company, Inc.
 

 Answering the suit, defendant denied that the servitude had expired because, on November 15, 1926, the plaintiff, in conjunction with R. O. Roy, through whom defendant holds, and other mineral owners executed a mineral lease for five years in favor of Woodley Petroleum Company, covering Tract “A”, and the S% of SWy, of NE% of Section 22, hereinafter for convenience designated as Tract “B”, and that, by the execution of this lease, Tracts
 
 “A”
 
 and “B” were integrated and that development of Tract “B”, on which a producing oil and gas well was drilled on April 4, 1927, constituted a development and operation of both tracts sufficient to prevent the running of prescription against the servitude acquired by McFadin on Tract “A”; further, on November 2, 1934, plaintiff and others executed an integrated or unitized lease to the Ohio Oil Company covering the north half of Tract “A”, the effect of which was to acknowledge the rights of the defendant and thereby prevent the running of prescription.
 

 On these issues the case went to trial, which resulted in a judgment decreeing that all rights acquired by defendant to any of the minerals lying in or under Tract
 
 “A”
 
 had been lost by the prescription of ten years’ non-user, and further decreeing that the servitude on said tracts, asserted by defendant, to be no longer in force and effect. From-that judgment defendant prosecutes this appeal.
 

 Tract
 
 “A”
 
 is composed of 40 acres and Tract “B” is composed of 20 acres. Plaintiff is in actual, physical possession of both tracts, subject to the claims of the defendant. A written agreement of the parties and the accompanying documents disclose the following facts:
 

 On September 21, 1922, the plaintiff, Levi C. Cox, conveyed to G. E. McFadin, by deed duly recorded, an undivided one-half interest in the minerals under Tract “A”. The mineral interest thus conveyed is designated herein as the McFadin servitude.
 

 On November 16, 1923, McFadin conveyed to R. O. Roy, by deed duly recorded, an undivided one-sixth interest in the minerals under Tract “A”.
 

 On February 5, 1924, Levi C. Cox, the plaintiff, conveyed to W. H. Cook, by deed duly recorded, an undivided one-fourth interest in the minerals under Tract “B”. The mineral interest thus conveyed is designated herein as the Cook servitude.
 

 On February 6, 1924, Cook conveyed to R. O. Roy, by deed duly recorded, an undivided one-sixth interest in the minerals under Tract “B”.
 

 Thereafter, on November 15, 1926, Levi C. Cox, the plaintiff, R. O. Roy, and six of the ten other mineral owners executed a mineral lease to the Woodley Petroleum Company, which lease was for a primary
 
 *693
 
 term of five years and covered the entire sixty acres embraced in Tracts “A” and “B”. This lease was not signed by O’Brien Bros., Inc., E. L. Wagner and Harry E. Oliver, owning a %4th interest, and the North Central Texas Oil Company owning a %4th interest, in the minerals under the 40 acres composing Tract “A”.
 

 On April 4, 1937, the Woodley Petroleum Company drilled a producing oil and gas well on Tract “B”. This well has been operated continuously since the date of its completion, and the royalties stipulated in the lease have been paid to the mineral owners in the proportions they own in the mineral acreage under the Tract “B”.
 

 On January 15, 1929, the Woodley Petroleum Company released from the provisions of its lease the 20 acres composing the north half of Tract “A”. Thereafter, in November 1934, the plaintiff and two mineral owners executed mineral leases in favor of the Ohio Oil Company covering their interests in the north half of Tract “A”.
 

 On May 1, 1935, R. O. Roy, by deed duly recorded, conveyed to the Acme Land & Investment Company, Inc., defendant herein, an undivided one-sixth interest in the minerals under the entire 60 acres composing Tracts “A” and “B”, subject to the lease in favor of the Woodley Petroleum Company.
 

 On August 14, 1937, the Woodley Petroleum Company completed another producing well on the division line of Tracts “A” and “B”, which well has continued to produce oil and gas in paying quantities, the royalties resulting therefrom being withheld pending the outcome of this suit.
 

 The servitude that plaintiff seeks to have declared extinguished by non-user of ten years is the McFadin servitude covering Tract “A” in which defendant acquired an undivided one-sixth interest by mesne conveyance. As more than fourteen years has elapsed between the date this servitude was created and the drilling of the well by the Woodley Petroleum Company on Tract “A”, it is clear that the servitude has become extinguished by prescription unless the prescription has been interrupted. Defendant claims that this has occurred a number of times.
 

 Defendant contends that the running of prescription was first interrupted on November 15, 1926, when R. O. Roy, being the owner of an interest in the McFadin servitude embracing Tract “A”, which is the one sought to be cancelled, and being likewise the owner of an interest in the Cook servitude embracing Tract “B”, in conjunction with the plaintiff Cox and others, executed the lease of November 15, 1926, in favor of the Woodley Petroleum Company covering the entire 60 acres owned by plaintiff. Defendant argues that this lease is what is known as a joint lease, that is, joint as to the lessors since, under the contract, the 60 acres covered by the lease is treated as one tract of land and the lease nowhere makes any reference to the individual ownership of the several lessors; that the obligation of the lessee in favor of the lessors was also a joint obligation. And defendant argues that the
 
 *695
 
 execution of this lease constituted an acknowledgment of all the rights of the defendant in both Tracts
 
 “A”
 
 and “B” sufficient to interrupt prescription, and that the production thereafter of oil and gas from the' 20 acres of land embraced in the Cook servitude constituted a development of both tracts and was the exercise of both the McFadin servitude and the Cook servitude.
 

 The lease to the Woodley Petroleum Company was executed a little over four years after the servitude was created. Its primary term is stated to be five years. The lease contains another clause to the effect that a well must be commenced by February 1, 1927, or the lease would be forfeited unless the lessee on or before that date should pay or tender to the lessor a certain stipulated rental for the privilege of deferring for twelve months the commencement of a well, with the further privilege granted the lessee, upon like payments or tenders, of deferring the commencement of a well for like periods of the same number of months successively. The effect of the five-year primary term was that if the well drilled was dry, the lessee could still retain the lease by paying the agreed rentals therefor. In the absence of production, the term of the lease would expire on November 15, 1931, which was less than ten years after the servitude was created and, under the decision of this court .in Bremer v. North Central Texas Oil Company, Inc., 185 La. 917, 171 So. 75, execution of the lease did not of itself interrupt prescription.
 

 . Defendant was the owner of an undivided interest in two servitudes on separate tracts of the entire 60 acres owned by the plaintiff. One was for one-sixth of the minerals on Tract “B” covered by the Cook servitude on which, on April 4, 1927, the lessee drilled a producing well, which was still producing and as to which servitude there is no dispute; the other was for one-sixth of the minerals on the Mc-Fadin servitude covering Tract
 
 “A”,
 
 which is the servitude involved in this suit.
 

 Defendant contends that the lease of the Woodley Petroleum Company, being a joint lease, integrated the two servitudes; that after the execution of the lease there was only one servitude, and that the production of oil and gas on any portion of the 60-acre tract preserved the servitude created by plaintiff on the whole tract.
 

 Defendant, in support of its contention, cites Nabors v. Producers’ Oil Company, 140 La. 985, 74 So. 527, L.R.A. 1917D, 1115, and Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785. The leases .reviewed in those cases and the lease under consideration in this case are not the same in all their aspects. The cited cases, however, are authority for the proposition that, whether a contract is joint or severable depends upon the intention of the .contracting parties, as revealed by the language of their contract and the subject-matter to which it refers. Thus,1 in the opinion handed down in the Nabors case this Court, after referring to Articles 2080 and 2081 of the Civil Code defining joint, obligations
 
 *697
 
 and severable obligations, stated [140 La. 985, 74 So. 532]: “But the Code does not lay down a rule for determining what contracts are joint and what are severable, except that, when several persons join in the same contract to do the same thing it produces a joint obligation on their part, and that, when an obligation is incurred in favor of several persons for the performance of something for their common benefit, it creates a joint obligation in their favor. Whether a contract is severable or joint depends upon the intention of the contracting parties as revealed by the language of their contract and the subject-matter to which it refers.” In commenting upon the foregoing statement in the Nabors case this Court, in the Shell case, stated [185 La. 751, 170 So. 789]: “Inasmuch as the question, whether the rights and obligations of the parties to a contract in any given case are joint or severable, depends entirely upon what was the intention of the parties to the contract, and, inasmuch as the question, as to what was the intention of the parties in any given case, is only a question of fact, the decisions on the subject are of little or no value as precedents. The decision in each •case turns not upon a presumption of law but upon the terms of the contract. The only rules that are applicable in such cases are the rules for the interpretation of contracts.”
 

 The rule for determining whether .a mineral lease is joint or severable, laid down in the Nabors case and in the Shell case, was approved and followed in the later case of Louisiana Canal Company v. Heyd, 189 La. 903, 181 So. 439, 116 A.L.R. 1260.
 

 The lease to the Woodley Petroleum Company was signed by L. C. Cox, the plaintiff, F. B. Treat, C. E. Miller, W. H. Cook, R. O. Roy, T. G. Hibbler, Mrs. Adele G. Dorchester and Mrs. J. P. Glasgow. At. the time the lease was executed, the mineral rights in the 60 acres of land owned by Levi C. Cox, the plaintiff, and embracing Tracts “A” and “B”, were owned as follows:
 

 As to Tract “A”, embracing the north 40 acres:
 

 L. C. Cox (landowner) '1/8
 

 Frank B. Treat ' 1/8
 

 C. E. Miller ¡1/4
 

 O’Brien Bros. Inc. 1/8
 

 E. L. Wagner 1/24
 

 R. O. Roy 1/6
 

 Harry E. Oliver 1/24
 

 North Central Texas Oil Co. 3/24
 

 As to Tract “B” embracing the south 20 acres:
 

 L. C. Cox (landowner) 1/8
 

 Frank B. Treat 1/8
 

 C. E. Miller 1/2
 

 R. O. Roy 1/6
 

 T. G. Hibbler 1/36
 

 W. H. Cook 1/36
 

 Mrs. Adele G. Dorchester and Mrs. J. P. Glasgow 1/36
 

 From the foregoing it will appear that the lessors in the mineral lease to the Woodley Petroleum Company owned all the minerals in Tract “B” embracing the south 20 acres of the 60-acre tract owned by the plaintiff, and a 1%4th interest in
 
 *699
 
 the minerals in Tract
 
 “A”
 
 embracing the north 40 acres of the 60-acre tract owned by the plaintiff. T. G. Hibbler, W. H. Cook, Mrs. Adele G. Dorchester and Mrs. J. P. Glasgow owning a
 
 %a
 
 interest in the mineral rights in Tract “B” did not own any interest in the mineral rights in Tract “A”. O’Brien Bros., E. L. Wagner, Harvey E. Oliver, and the North Central Texas Oil Company, owning an
 
 %ith
 
 interest in Tract “A”, did not own any interest in the mineral rights in Tract “B” and did not sign the lease.
 

 The language of the lease indicates that the contract is severable and not joint. The lessors apparently recognized the severance of the two contracts and the obligations imposed thereon by expressly waiving any right to exact development on Tract “A”, embracing the north 40 acres of the 60-acre tract covered by the lease. The lease provides: “Lessors agree in consideration of the acceptance hereof by lessee that: Whereas they are unable to secure the ratification of this lease by all of the mineral owners in the north 40-acre tract of the property above described, that they hereby waive all privileges of offset drilling which they may have on said north 40-acre tract under the terms of this lease.” Thus, it is expressly stipulated in the lease itself that, because the signatures of all the owners of the minerals in Tract “A” (the north 40-acre tract) were not obtained by the lessors, no obligation was imposed upon the lessee to drill on that tract, thereby, in effect, constituting a full and complete lease only on Tract “B” (the south 20-acre tract) where the well was actually drilled in April, 1927.
 

 In the Shell case, supra, this Court said: “ * * * in a joint lease, where there is no stipulation on the subject, the obligation to pay the stipulated royalty is an obligation in favor of the lessors jointly, requiring the royalty due from any part of the land to be apportioned between or among the lessors in proportion to the acreage owned by each of them.”
 

 It is clear that it was not the intention of the lessors that the owners of the minerals in Tract “A” were to share in the benefits accruing from the production on Tract “B”. There has been actual production on Tract “B” from 1927 to the present time, with the royalty payments incident to that production being made in proportion to the mineral acreage owned by each of the lessors in Tract “B” alone.
 

 The lease was not made whole because all the mineral owners did not sign it. Nor is the lease an unitized or integrated contract because, under that kind of lease, the royalties are paid and accepted in proportion to the mineral interests of the various owners in the entire tract under lease and the record here shows that the royalties were paid and accepted only in proportion to the ownership of the south 20 acres composing Tract “B”, where the well was drilled. It plainly appears, therefore, that the defendants have not construed or treated the lease as they would now have it construed or treated. If the McFadin servitude covering the 40 acres ánd the Cook servitude covering the south
 
 *701
 
 20 acres of the 60-acre tract had been merged when the lease to the Woodley Petroleum Company was executed, then the royalties should have been exacted and paid, and would have been exacted and paid, in proportion to the interests that the various mineral owners had in the entire 60 acres and not according to the mineral interests owned by them only in the south 20 acres.
 

 Defendant further argues that since the lease is in effect as to the Woodley Petroleum Company, it is still in effect as to all the parties thereto and their assigns, including the defendant, not only as to Tract “B” but as to each and every acre covered by the lease.
 

 The McFadin servitude covering Tract
 
 “A”
 
 was created in 1922 and expired by prescription in 1932. The primary term of the Woodley lease terminated November 5, 1931, which was one year prior to the date of the expiration by prescription of Roy’s mineral rights. The joinder of the plaintiff and Roy, defendant’s author in title, in the execution of the lease was not an acknowledgment as would interrupt the running of prescription and had no effect thereon. The discovery of oil or gas never extends the primary term of a mineral lease, which is that period stipulated by the parties during which the lease may be kept alive by means other than the actual production of oil or gas. . The fact that the life of the Woodley lease was extended by production on one of the servitudes covered by the lease did not relieve the owners of the other servitude of their obligation to exercise their rights thereunder. There still rested on these owners, under the penalty of losing it, the obligation to use their servitude, which obligation they did not discharge prior to December 31, 1932.
 

 Where there are distinct and separate servitudes there must be development on each servitude to prevent the running of prescription against it, and the development of one of the servitudes, no matter how extensive, will not interrupt the running of prescription against the other servitude. Lee v. Giauque, 154 La. 491, 97 So. 669; Keebler v. Seubert, 167 La. 901, 120 So. 591; Arent v. Hunter, 171 La. 1059, 133 So. 157; Frost Lumber Industries v. Union Power Co., 182 La. 439, 162 So. 37.
 

 While the lands embraced in the lease to the Woodley Petroleum Company are contiguous, the servitudes resting thereon are separate and distinct servitudes, having been acquired by R. O. Roy, defendant’s author in title, from- Levi C. Cox, the plaintiff, by mesne conveyances executed at different times, from which it follows that the development by the Woodley Petroleum Company, the lessee of both plaintiff and defendant, on Tract “B”, the 20-acre tract, can not affect the running of prescription on Tract “A”, the 40-acre tract.
 

 Defendant further contends his intention that production under the Woodley Petroleum Company lease should interrupt the running of prescription on the servitude granted by plaintiff and now claimed by defendant is evidenced by the
 
 *703
 
 joint lease executed by the plaintiff, F. B. Treat and C. E. Miller, on November 2, 1934, to the Ohio Oil Company. This lease embraces the 80 acres constituting the north half of the northeast quarter of Section 22, Township 21 North, Range 10 West, which includes the north half of Tract
 
 “A”
 
 that was released by the lessee Woodley Petroleum Company on January IS, 1929.
 

 At the time of the execution of the lease to the Ohio Oil Company, the servitude of defendant on the 20 acres composing the south half of Tract
 
 “A”
 
 had been, lost by ten years’ non-user, and could only be revived by a specific act having that object in view. The lease to the Ohio Oil Company was not such an act. An examination of that lease discloses it was not signed by Roy or by the defendant. No reference is made in the instrument to any. servitude or to any right owned or claimed by Roy, or by the defendant. Nor is any mention made therein o,f the McFadin servitude. Roy’s lease to the Ohio Oil Company of his interest in the '80 acres was not executed until November 30, 1934. Moreover, the undisputed testimony of the plaintiff Cox is that in executing the lease to the Ohio Oil Company he did not intend to acknowledge the claims of any person to the mineral rights under his land and that the first time he knew Treat and Miller had signed the instrument was when a division order was presented to him for his signature, which order he refused to sign.
 

 As to the well which was drilled by the Woodley Petroleum Company in 1937 on the division line of Tracts “A” and “B”, it is clear that the drilling of this well, under the lease from plaintiff, the landowner, after prescription had accrued as to the mineral owners of the south half of theMcFadin servitude, did not constitute an interruption or renunciation of prescription. La Del Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 HIGGINS, J., absent.