On Rehearing
MOISE, Justice.
Mr. Justice Hamiter was tolerant in that he subscribed to the granting of a rehearing, feeling that the importance of the case justified this action even though he was convinced of the correctness of his original opinion.
We now seek the reason why this matter has become so controversial in the process of its judicial development when the pleadings and the judgment appealed from demonstrate the issues necessary for a decision. Furthermore, there is no- dispute of facts revealed in the evidence. Not a single witness contradicted any other witness, yet,, there is a legal gulf between the facts as-applied to the law and the factual design on. which the majority of the court has based its decision. We do not mean to say that there was a failure in the majority opinion to narrate all of the important facts. The-opinion itself shows that it did. 'But our contention now is one of substance on application of the law to the facts and the applicable facts to the issue must be accentuated.
Chief Justice Fournet in his dissent said that he could not subscribe to the doctrine that an instrument affecting immovables is. binding on third persons, although not recorded. This is the essential of.the main issue in the case, but a discussion of the incidentals will be necessary on account -o£ what has gone before.
 The instrument in question, styled' a “Declaration of Interest”, dated December 16, 1942, relates to a mineral servitude. A mineral servitude is a terminable property right. Act No. 6 of the 2d Extra Ses-' sion of 1950, LSA-RS 9 :1105. A servitude on immovable property is lost by nonuse for 10 years. This is the provision of Article’ 3546 of the Revised Civil Code. The pleadings and proof of record disclose that the servitude ‘ was lost on June 16, 1942, and nothing was done until December 17, 1942; and we say that, although a liberative prescription of a mineral servitude may be in— *181 terrupted by an acknowledgment which was made prior to the -accrual of prescription, the acknowledgment will not be sufficient to renounce after the accrual of prescription.
In English v. Blackman, 189 La. 255, 179 So. 306, our court has pronounced the servitude after the accrual of prescription as a dead thing. This servitude has been dead for six months. There can be no- resurrection. It can only be recreated by a new agreement. Besides, this court has established several strict requirements with which the acknowledgment intended to interrupt a liberative prescription of the servitude must comply:
“The ’acknowledgment must be express and certain. La Del Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684; Baker v. Wilder, 204 La. 759, 16 So.2d 346. It must have been made with the intent and for the purpose of interrupting prescription. Lewis v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859; Bremer v. North Central Texas Oil Co., 185 La. 917, 171 So. 75. It must adequately describe the property to which it applies. Frost Lumber Industries v. Union Power Co., 182 La. 439, 162 So. 37; Cox v. Acme Land & Investment Co., 192 La. 688, 188 So. 742; Achee v. Caillouet, 197 La. 313, 331, 1 So.2d 530, 536. It must be in writing because mineral rights are classified as immovables. Noble v. Plouf, 154 La. 429, 97 So. 599. Fttrthermore, the acknozvlcdgment must he recorded in order to effect third persons. Goldsmith v. McCoy, 190 La. 320, 182 So. 519.” 23 Tul.L. Rev. 412. The last is essential, the last is the issue in this case, and, the last must be given sanctity. Because we have no mineral Code our problem is to make the law so exact that “he who runs may read”, and so that a great industry can operate on a practical basis.
When the servitude has been lost or extinguishecTby non-usage for ten years, that does not le-ave the landowner burdened with a natural obligation to the mineral owner, regardless of whether the mineral owner acquired these mineral rights from him or from a predecessor in title. Our courts have decided the following: “The exercise of mineral rights by drilling will not revive the servitude after prescription has -accrued. Porter-Wadley Lumber Co. v. Bailey, 5 Cir., 1940, 110 F.2d 974; La Del Properties v. Magnolia Petroleum Co., 169 La. 1137, 1143, 126 So. 684, 687. The grantor does not renounce the prescription by accepting rental payments after the prescription has run. English v. Blackman, 189 La. 255, 179 So. 306; White v. Hodges, 201 La. 1, 9 So.2d 433. The language of the cases indicates that a mineral servitude cannot be revived after it is extinguished by prescription. Porter-Wadley Lumber Co. v. Bailey, supra; English v. Blackman, supra; Cox v. Acme Land & Investment Co., 192 La. 688, 188 So. 742; Deas v. Lane, 202 La. 933, 13 So.2d 270; Wall v. United Gas Public Service Co., La.App., 181 So. 562, 567.” 23 Tul.L.Rev. 413.
*183 The learned judge of the district court said that the instrument styled “Declaration of Interest”, sought to be can-celled, is effective as an acknowledgment and an interruption of prescription. The error of law is self-evident. The acknowledgment was made after the accrual of prescription and, secondly, this instrument cannot affect the rights of third persons unless recorded.
The Articles of the Revised Civil Code relating to registry are clear and consistent:
“Art. 2261. Whenever an act under private signature shall be taken to the register to be recorded, as required by the preceding article, he may, if thereunto requested by the parties, take an acknowledgment of their signatures, which acknowledgment shall be recorded with the act under private signature.
* * * * * *
“Art. 2265. All sales of immovable property made by any sheriff or other officer, by virtue of any execution or other order of court; all marriage contracts made within this State, tending in anywise to convey, transfer, assure or affect the estates of the parties, or being only intended to ascertain the dotal rights of the wife, or that her marriage portion is liable to some reserves, or stipulated to be paraphernal or extra dotal property; and all final judgments affecting immovable property shall be recorded in the parish where the immovable property is situated.
“Art. 2266. All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
“The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.”
These articles must be complied with religiously. The instrument dated December 16, 1942, styled “Declaration of Interest”, in no wise affected the rights of the plaintiff. The recordation of that instrument after plaintiff’s acquisition does constitute a cloud on plaintiff’s mineral ownership and should be cancelled and erased. “There is no virtue in sinning against light or in persisting in palpable error, for nothing is settled until it is settled right.”
For the reasons assigned, the judgment appealed from is annulled, reversed and set aside; and
It is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, John E. Haynes, decreeing that the defendants herein (with the exception of Ardis C. Burns, as to the undivided one-fourth interest reserved by him in his sale to plaintiff) have lost all claims to any oil, gas and other mineral rights in and under and that may be produced from the Southeast Quarter of Section 13, Township 23 North, Range 10 West, in Webster Parish, *185 Louisiana, estimated to be 160 acres, more or less; and,
It it further ordered, that the “Declaration of Interest” dated December 16, 1942, filed for record in the Conveyance Records of Webster Parish, Louisiana, on December 28, 1942, and recorded at Vol. 157, Page 559, is of no force and effect, and accordingly, be cancelled from the said records.
Defendants-Appellees to pay all costs. The right is reserved to the defendants to apply for a rehearing.
McCALEB, Justice,
concurring.
I adhere to the view stated in my previous concurring opinion in this case that plaintiff is not entitled to the protection of the law of registry as he accepted title to the land burdened with a recorded servitude which may or may not have been in esse. Accordingly, he stands in the shoes of his grantor.
However, after a reconsideration of the matter on rehearing, I am persuaded that the Articles of the Civil Code dealing with the renunciation of an accrued prescription, Articles 3460, 3461 and 3462, cannot be applied to mineral servitudes without upsetting or rendering unstable the mineral law of this State which has been developed by the pronouncements of this court. It is firmly settled that a sale or reservation of a mineral right constitutes a dismemberment of ownership of the land, Long-Bell Petroleum Co., Inc. v. Tritico, 216 La. 426, 43 So. 2d 782 and cases there cited, and that, upon the accrual of the prescription of nonuser,
“the outstanding mineral interests revert to the person owning the land * * * ”. Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610. Hence, since- the extinguishment of the servitude revested the minerals in plaintiff’s grantor, the only way a new servitude could be created was by a title as a tacit renunciation of prescription could not resuscitate the real right which had already expired and title to which had become merged with the ownership of the surface of the land.
It thus appears that the Articles of the . Civil Code on renunciation of prescription cannot be given effect as to mineral servitudes since those Articles would permit the renewal or creation of a discontinuous non-apparent servitude, either expressly or tacitly, and not by title,, as provided by Article 766 of the Code.
For these reasons, I concur in the decree.
HAMITER, Justice,
dissenting.
I not only subscribed to the granting of this rehearing, but I also made the recommendation from which it resulted. Still entertaining the views which I expressed as the author of the original majority opinion, I did this solely for the reason that the issues involved are not free of difficulty in solving and, too, the controversy is of vast importance throughout the State with respect to dealings in mineral and royalty rights.
The case presents two issues of law. These are: (1) As between Ardis C. Burns *187 (plaintiffs grantor) and the defendants did the instrument styled Declaration of Interest, executed by these persons on December 16, 1942, serve to revive the prescribed mineral rights which had been reserved by defendants through duly .recorded authentic acts on and prior'to January 11, 1930? (2) If the mineral rights were so revived and were outstanding when plaintiff purchased the land, did he take subject to them, he having had actual knowledge of their existence although he had no recorded notice of the executed Declaration of Interest?
These issues arise, and the confusion here occurs, as a result of the established jurisprudence of this court to the effect that a salle or a reservation of mineral rights •creates a servitude which is governed by the provisions of the Revised Civil Code relating to the subject of servitudes, including Article 789 reciting that a right to servitude is extinguished by the nonusage of the same during ten years. Were it not for the application of the servitude articles to mineral rights, held to be proper by that jurisprudence, these defendants would have to be recognized as the unqualified owners •of real interests or rights in and to the affected land inasmuch as they hold under ■duly recorded contracts or deeds effective against all the world, including this plaintiff; and the issues above stated would be non-existent.
Heretofore, I have questioned the soundness of such jürisprudehce. See .concurring opinion in Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746. It is my belief that the sale or reservation of minerals represents merely divesture by the landowner of a definite interest in the immovable and is governed Only by those codal provisions which deal with conventional obligations. As is indicated by the language of the servitude articles of the Civil Code such a sale or reservation does not and cannot result in the establishment of either a personal or a prediál servitude — the only two kinds of servitudes known to1 the civil law. It does not and cannot result in a personal servitude, for a servitude of that nature terminates with the life of the person for whose benefit it is established. Civil Code, Article 646. Surely mineral rights are not extinguished by the death of the purchaser or the owner thereof; they are heritable. Moreover, the sale or reservation of minerals does not and cannot result in a predial servitude, for a servitude of that kind is “a charge laid on an estate for the use and utility of another estate belonging to another owner.” Civil Code, Article 647. Indisputably a purchase-of mineral rights is not for the use and Utility of any estate; it is for the purchaser’s individual benefit, consummated with the hope of personal financial gain.
I realize and concede, of course, the many advantages that can and do flow from the prescribing of mineral’rights after the lapse of a ten year period. But the applicable prescription should be one provided for in a special statute or mineral code deal *189 ing specifically and exclusively with oil and gas rights and setting forth the various necessary rules, especially as to suspension and interruption, peculiarly appropriate thereto. The application to minerals of the several prescriptive provisions of our Civil Code, including that concerning servitudes, should not be attempted, for when they were adopted oil and gas rights were unknown to the redactors and, therefore, they were not intended to be appropriate. Too, a continuance of the attempts to apply to mineral rights the present codal provisions regarding servitudes and prescription will add to the confusion already existing in our oil and gas jurisprudence.
But irrespective of my above announced individual views, a rule of property has been established by the discussed jurisprudence and, until the Legislature orders otherwise, we must, as best we can, determine disputes involving the prescribing of minerals in the light of the mentioned codal articles which treat of servitudes and prescription.
Adverting then to the first issue of this controversy, to me it seems necessary to hold, in view of Civil Code Article 3461, that as between plaintiff’s grantor (Burns) and these defendants the executed Declaration of Interest served to revive the prescribed mineral rights originally reserved by the latter. This article appears in the Civil Code in Section I (General Provisions) of Chapter 3 (Of Prescription) and, when considered along with the other articles of the section, its application evidently was intended for prescriptions generally, both liberative and acquisitive. This being true there resulted at least a tacit renunciation of Burns’ accrued prescriptive rights, in accordance with said Article 3461, when he executed the authentic declaration solemnly recognizing defendants to- be the owners of the disputed mineral interests, the fact of execution having furnished “a presumption of the relinquishment of the right acquired by prescription.”
The other issue in the case — whether this plaintiff took the land subject to the recognized and outstanding mineral rights of defendants — calls in question Civil Code Article 2266 as interpreted and applied in McDuffie v. Walker, 125 La: 152, 51 So. 100. In substance, such article provides that all sales, contracts and judgments respecting imnjovable property shall only affect third persons from the time of the recording thereof. In the instant case, I think, there has been a full compliance with the requirement of this codal provision.
The only sales or contracts affecting immovables involved here (there are no judgments) are those by or through which defendants originally reserved the mineral rights; and the documents evidencing them were of record when plaintiff purchased the land. The unrecorded Declaration of Interest, executed by plaintiff’s grantor, cannot be considered a contract within the meaning of such article. “A contract is. an agreement, by which one person obligates himself to another, to give, to do or *191 permit, or not to do something, expressed or implied by such agreement.” Civil Code, Article 1761. The renunciation of accrued prescription such as is found here, or even the interruption by acknowledgment of a running prescription, does not involve an agreement at all. Each constitutes nothing more that a waiver or relinquishment by the landowner of his prescriptive rights. It is entirely possible, as a matter of fact, for a landowner to effect such a waiver or relinquishment (through the execution of a renunciation or acknowledgment document) even without the knowledge of the mineral owner, in which case it could not be correctly said that there was an “agreement” or a “contract” between the parties. Furthermore, inasmuch as a renunciation of accrued prescription may be tacit, Article 3461, the recording of a tacit renunciation surely was never contemplated by the redactors of the Civil Code.
In my opinion the recording of a renunciation or acknowledgment document (with reference to liberative prescription) is no more necessary to affect third persons than the recording of evidence showing usage of mineral rights or of an order of the Commissioner of Conservation unitizing acreage for drilling purposes, the placing of record of each of which is not required although each has been held to interrupt the running of prescription.
True, as pointed out in the majority opinion on this rehearing, this court observed in Goldsmith v. McCoy, 190 La. 320, 182 So. 519, 522, that “ * * * a contract, whether intended to create or acknowledge an existing discontinuous servitude or a continuous nonapparent servitude against which prescription was accruing, in order to affect third parties in good faith, must be recorded in conformity to the law of registry in this State.” But this observation was obiter dicta, for the court immediately thereafter held: “But even if these unrecorded documents were binding upon the plaintiff as a third person, they would not help the defendant’s case.” And the reason, assigned for this holding was that there was nothing in the documents to show or even indicate that the owners in executing them intended to interrupt the running of prescription. Moreover, the Goldsmith decision made no reference to the established jurisprudence to the effect that evidence of the interruption of an accruing liberative prescription need not be recorded to affect third persons. White v. Ouachita Natural Gas Company, Inc., 177 La. 1052, 150 So. 15; Baird v. Atlas Oil Co., 146 La. 1091, 84 So. 366.
It is my conclusion, therefore, that this plaintiff took the land subject to the recognized and outstanding mineral rights of these defendants, notwithstanding that the discussed Declaration of Interest was not of record when he purchased.
For the above reasons, as well as those which I assigned originally, I respectfully dissent from the majority holding on this rehearing.