TA.TE, Judge
(dissenting).
. I respectfully dissent.
Plaintiffs, owners of an 822-acre tract, filed this jactitation suit alleging that their title was Slandered by a mineral servitude, originally created in 1919 (35 years before suit) and originally including 38,000 acres of land. No drilling or production thereunder had taken place on plaintiffs’ land for more than 10 years before suit.
In my opinion, under these circumstances, the District Court correctly held under Ware v. Baucum, 221 La. 259, 59 So.2d’ 182, that plaintiffs had made out a prima facie case of possession; requiring *268 the defendants to prove title to said servitude in a revendication action brought within a specified time.
The majority relies upon Lenard v. Shell Oil Co., 211 La. 265, 29 So.2d 844, and International Paper Co. v. Louisiana Central Lumber Co., 202 La. 621, 12 So.2d 659, in which in the absence of objection such proof was permitted within the jactitation suit itself.
In these latter two cases, the defendant actually proved that the original mineral servitude had been interrupted by user before expiration so as still to affect the plaintiffs’ property at the time the jactitation suit was filed.
A more serious objection to the majority opinion, however, is its failure to discuss or meet the plaintiffs-landowners’ alternative argument. Conceding arguendo that the evidence as to interruption by user of the servitude before its expiration is admissible, appellees alternatively argue that the defendant has not proved that its 1919 servitude was interrupted by user before expiration or extended, so thaf drilling operations on other portions ,o.f the 38,000-acre tract since 1929 maintained said servitude insofar as plaintiff’s small portion of this vast expanse is concerned.
It is true, as the majority holds, that drilling or production under a mineral servitude constitutes possession not only of the tract in question, but also of all contiguous tracts subject to the same single indivisible servitude. But the majority overlooks that production on a contiguous tract does not constitute possession as to another tract unless they are both subject to the same indivisible servitude, see such cases as Calhoun v. Ardis, 174 La. 420, 141 So. 15, Cox v. Acme Land & Investment Co., Inc., 192 La. 688, 188 So. 742.
‘ Thus in the record before us we ’have proof of the 1919 servitude, which-was éx-tended by a supplemental agreement dated November 26, 1929 (D-2), plus proof of, certain drilling operations from 1929 and production from 1938 on other tracts ;during the'interval to date of suit.
Such drilling and production activities on these other tracts cannot constitute possession as to the tract in question tmless both the other tracts and the present land were subject at the time thereof to the same indivisible servitude. Drilling on my neighbor’s land does not constitute possession of a mineral servitude affecting my land, unless both lands are subject to a single indivisible servitude by virtue of which the said drilling operations are conducted.
Thus drilling on the contiguous tract has actually no legal effect on or relationship to a mineral servitude on the other tract— unless because of an indivisible servitude affecting both tracts.
■ Therefore, before one can determine whether such drilling on a contiguous tract constitutes possession of the mineral servitude affecting another tract, it is necessary to determine first whether the mineral servitude by virtue of which the drilling is done includes both tracts indivisibly subject thereto.
In effect, “possession” and “title” in this situation are identical. One doesn’t “possess” the mineral servitude as to the other tract, unless the latter is indivisibly affected by the servitude under which one is drilling the contiguous tract, i. e., unless the servitude’s “title” extends to both tracts. Production or drilling on the other tract cannot constitute possession of a mineral servitude on the drilled tract unless one has title to a servitude including both tracts.
It seems to me that the majority has put the cart before -the horse when it holds that defendant proved “possession” as to the un-drilled tract' herein, by those drilling operations -on other tracts, when we have failed first to find whether the undrilled tract was actually subject to an indivisible servitude, by virtue of which the drilling operations were -conducted on the allegedly contiguous tracts.
' It is true that back in 1919 all tracts in question w.ere subject to a single mineral' ,, servitude affecting.38;000 ac'fes 'of land.'
*269 But in 1929, by the instrument introduced as D-2, the mineral servitude was extended “for an additional period of five years only * * * unless sooner terminated or further extended as hereinafter provided(Tr. 39.) (Italics mine.) It continued the 1919 agreement specifically “with the following modifications.” (Tr. 39.)
The first important modification was by Clause 2, wherein Defendant agreed to select within 18 months from August 13, 1929, blocks of land not more than 5,000 acres in each block, and to release and convey back to the original landowner (St. Martin Land Company) all mineral interests not retained. (Tr. 39-40.)
There is not one iota of proof in the record that plaintiffs’ 822-acre tract was included within any of the blocks over which defendent retained its servitude. So far as the record shows, plaintiffs’ tract was not within any land over which the servitude was retained by defendant, so that drilling operations on contiguous tracts would have the effect of maintaining defendant’s possession.
I further feel it quite probable that the evidence affirmatively shoAvs the lease expired under its own terms on March 29th, 1934, by the failure of the leaseholder to conduct “continuous drilling operations” thereafter as defined by Clause 4 of said 1929 agreement, although perhaps this effect is avoided by the escape clause shown as 5 (b) thereof. However, the apparent intention and effect of Clause 4 was to create separate servitudes as to each separate 5,000-acre block retained by defendant (rather than the former indivisible servitude affecting all the land leased); and there is no showing that such drilling operations were conducted on any particular 5,000-acre block (whether or not including plaintiffs’ land).
The effect of the majority opinion is to place the burden on the landowner to prove that the servitude created thirty-five years before had terminated; rather than the burden being upon the servitude-holder to prove that this ancient servitude was interrupted by user or otherwise extended so as still to affect tracts other than those upon which drilling or production had actually taken place. As a practical matter, the servitude-holder claiming that drilling or production has taken place somewhere in the 38,000 acres, so as to affect the smaller tracts situated elsewhere, should be required to prove same. If his claim is valid, he is in a much better position to prove such user, than is the owner of small acreages situated elsewhere in the original vast expanse to prove that nowhere in the 38,-000 acres did user take place in time to extend the servitude. With due respect to my learned brethren, I feel that this is an unfair burden to place upon the landowner of these smaller tracts; and (as noted by the District Court) one contrary to law and the prior jurisprudence.
For the above and foregoing reasons, I respectfully dissent from the opinion of my learned brethren herein.
Rehearing denied;
TATE, J., dissenting.